2140 LINCOLN PARK WEST et al., Plaintiffs-Appellants, v. AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, Trustee, et al., Defendants-Appellees.

First District (5th Division)    No. 79-1371

Opinion filed September 12, 1980.

Pederson & Houpt, of Chicago (Marilee Roberg and Jonathan B. Gilbert, of counsel), for appellants.

Nathenson & Gussin, of Chicago (Zave H. Gussin, of counsel), for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

This appeal arises out of an action to foreclose a mortgage and accelerate full payment of the underlying debt. On defendant's motion to dismiss, the trial court held that paragraph 15 of the trust deed was ineffective to serve as a basis for acceleration of the note and foreclosure of the trust deed. On appeal, plaintiffs contend that the trial court erred since the note and trust deed are to be construed together, thereby providing the right to accelerate payment of the note and to foreclose the trust deed. We affirm the judgment of the trial court. The relevant facts follow.

Plaintiffs, 2140 Lincoln Park West, an Illinois General Partnership (Partnership), and Chicago Title and Trust Company, as Trustees, brought a foreclosure action against defendants, American National Bank and Trust Company of Chicago, as trustees, under Trust No. 38104 (Trust) dated November 17, 1975, and Unknown Owners on February 7, 1979.

Plaintiff Partnership is the former owner of a multiunit apartment building located at 2140 Lincoln Park West in Chicago. Following negotiations with the beneficiaries of the Trust, it conveyed the building to the Trust in November of 1975, and provided financing in the amount of $950,000. The mortgage provided that the loan be repaid in monthly installments at an interest rate of 8½% per annum, with a maturing date in 1986. This instrument represents a "wraparound" mortgage, which allows existing mortgages to remain intact. It required that defendants make monthly payments to the Partnership, which in turn was required to continue monthly payments on the pre-existing senior mortgages.

The provisions relevant to this action are paragraphs 4 and 15 of the trust deed. Paragraph 4 provides:

> "When the indebtedness hereby secured shall become due whether by acceleration or otherwise, holders of the note or Trustee shall have the right to foreclose the lien thereon."

Paragraph 15, as amended by the supplemental trust deed provides, in pertinent part, as follows:

> "In the event of the sale of the premises, or in the event of the sale of more than 49% of the beneficial interest in the First Party to any entity other than a Permitted Investor Group as defined below, or a sale of more than 50% of the partnership interests or equity of the Permitted Investor Group after the initial syndication, the Holder of the Note may at its option, upon written notice to the First Party, declare all sums due under the Note to become immediately due and payable.
>
> A "Permitted Investor Group" is an Investor Group of which Irwin Noparstak is and remains either a General Partner or a director and share holder to the extent of more than 10% of its equity."

Defendants admit that the entire beneficial interest of the Trust was assigned to others than a Permitted Investor Group. Thereafter, plaintiffs brought an action to foreclose the mortgage and acceleration payment of the note based on defendants' breach of the condition in paragraph 15. On defendants' motion to dismiss, the trial court held that paragraph 15 of the trust deed was ineffective to serve as a basis for a foreclosure action. Plaintiffs appeal that order.

OPINION

Plaintiffs contend that the trial court erred in declaring paragraph 15 of the trust deed ineffective to serve as a basis for foreclosure, since the trust deed and note are to be construed together, thereby providing an enforceable right to foreclose the trust deed. In response, defendants argue that the trust deed and the note are separate instruments; consequently, the provisions found only in the trust deed have no effect on the material terms of the note. We agree.

■■ Defendants cite as controlling authority *Oswianza v. Wengler & Mandell* (1934), 358 Ill. 302, 193 N.E.2d 123, and *Conerty v. Richtsteig* (1942), 379 Ill. 360, 41 N.E.2d 476, wherein the Illinois Supreme Court held that mortgages and notes are separate undertakings and that any provision in the mortgage not found in the note itself has no effect on the note. In *Oswianza*, plaintiff brought an action against defendant to recover the principal and interest due on four matured bonds that had been secured by a trust deed. The trust deed contained a no-action clause which vested in the trustee exclusive right to sue. The sole question in that case was whether the bonds by their terms were subject to the provisions of the trust deed affecting the right to sue. If so, plaintiff had no right to sue thereon. However, the trial court ruled in favor of plaintiff and the appellate court affirmed. The supreme court affirmed that decision.

In reaching its decision, the court recognized the general rule of contract construction that requires instruments executed at the same time and as part of the same transaction to be read and construed as constituting a single instrument. However, the court also recognized an exception to this rule in cases of mortgages and notes. The court stated:

> "If all the agreements contained in the mortgage be, as a matter of law, imported into the note, the well recognized rule that a note negotiable on its face retains its negotiable character notwithstanding it is secured by a mortgage upon real estate could not obtain, for it is generally true that a negotiable instrument cannot be bound up and fettered with collateral agreements. The note or bond is a distinct promise to pay money. The pledge of real estate to secure that promise is a different and distinct agreement, which ordinarily in nowise affects the promise to pay but gives a further remedy for

failure to carry out that promise. A holder of a note may discard the mortgage entirely and sue on his note. (*Sturgis Nat. Bank v. Harris Trust and Savings Bank*, 351 Ill. 465; *Page v. Ford*, 65 Ore. 450; *Thorpe v. Mindeman*, 123 Wis. 149.) It follows that if there be read into the bonds in this case the no-action provisions of the trust deed it must be by an appropriate reference found in the bond. The mere statement that the trust deed and bond are to be considered as parts of one and the same contract states merely the fact, commonly known, that a bond, and the mortgage or trust deed securing it, are parts of the same transaction. The rule which plaintiff in error would invoke as to the necessity for reading all terms of one contract into another made at the same time and as a part of the same transaction does not apply to cases of this kind." *Oswianza*, 358 Ill. 302, 306-07, 193 N.E. 123, 125.

Furthermore, the court determined that the bonds contained no language that would incorporate by reference the no-action clause of the trust deed. Therefore, plaintiff was entitled to bring an action at law to recover on the bonds.

The principles set forth in *Oswianza* were again enunciated in *Conerty v. Richtsteig*. Defendants there purchased certain property for $74,000 and as part of the purchase price, executed a promissory note for $9,000. The note was dated July 1, 1920, and due July 1, 1925, with interest until maturity at 6% per annum and after maturity at 7% per annum. To secure payment of the note, defendants executed a trust deed on the property which contained the following provision:

> "The grantors covenant and agree * * * to pay said indebtedness and the interest thereon, as herein and in said notes provided, or according to any agreement extending time of payment."

On February 6, 1923, defendants sold the property to a party named Nielsen for $18,000, who in turn assumed the first mortgage of $9,000, gave defendants $5,300 in cash and a second mortgage for $3,700. The interest on the note was paid until July 1, 1925. A few days before maturity of the note, the agent for the owner of the note and Nielsen executed an agreement whereby payment of the principal debt was extended for five years, or until July 1, 1930, and the interest rate increased to 6½%. In 1930, the note was extended until July 1, 1935, and the interest on the debt was paid by Nielsen until July 1, 1936. Upon default in payment, plaintiff, the holder of the note, brought a foreclosure suit against defendants. The trial court granted the foreclosure and rendered a deficiency judgment against defendants, which decree was affirmed on appeal. The supreme court reversed that decision.

In support of it decision, the court initially determined that the transaction between defendants and Nielsen resulted in a definite change in the relation of the parties to the indebtedness. Nielsen became the principal

debtor and as such was personally liable; defendants became sureties and were thereby released from liability. Under these circumstances, the extension agreements were totally ineffective as to defendants.

The court found further support for its position based on the principle that mortgages and notes are separate and distinct instruments. As was stated by the court:

"Here, there is no provision in the note making any of the terms of the mortgage a part of the note. The better rule seems to be, that the note and mortgage are separate undertakings. The note relates to, and contains the contract of the maker to pay the debt and is wholly independent of the mortgage. The mortgage is not dependent upon the note executed by the mortgagors, for its validity. The note which is the evidence of the indebtedness may be made by third parties, or a mortgage may be valid where there is no note given. The mortgage relates only to the real estate pledged as security for the payment of the debt." *Conerty*, 379 Ill. 360, 365, 41 N.E.2d 476, 479.

■■ We believe the reasoning in *Conerty* and *Oswianza* to be sound and therefore adopt it. Applying the rationale in those cases to the facts presented here, we find that the trust deed and the note are wholly independent documents, and unless there is sufficient language in the note that would incorporate a provision in the trust deed, that provision is entirely ineffective as to the note. It follows, therefore, that paragraph 15 of the trust deed is ineffective in triggering acceleration of the note as there is no language in the note that would so provide. Consequently, there can be no foreclosure of the trust deed since acceleration of the note necessarily precedes foreclosure. As a result, paragraph 4 of the trust deed never becomes operative.

Although we recognize that our decision may result in a harsh outcome, we must point out that the drafters of the provision could have used more appropriate language in its drafting so as to insure an adequate remedy in the event of a breach. We believe that the present construction of the provision clearly results in a covenant without a remedy.

Nonetheless, at oral argument plaintiffs argued that the case of *Baker v. Loves Park Savings & Loan Association* (1975), 61 Ill. 2d 119, 333 N.E.2d 1, is dispositive of the issue present here. We believe, however, that *Baker* is distinguishable on its facts. In that case, plaintiffs executed a promissory note to defendant, which was secured by a mortgage that contained the following provision:

"Section A(8)(d) of the mortgage provides:

'A. THE MORTGAGOR COVENANTS DURING THE TERM OF THIS MORTGAGE:

&ast; &ast; &ast;

(8) Not to suffer or permit without the written permission or consent of the mortgagee being first had and obtained:

* * *

(d) A sale, assignment or transfer of any right, title or interest in and to said property or any portion thereof. * * *'" *Baker*, 61 Ill. 2d 119, 121, 333 N.E.2d 1, 2.

The note also provided as follows:

" 'We further agree that upon any default upon this obligation, or the instrument securing it, interest at the rate of one per cent (1%) per annum above the original rate provided herein on the unpaid balance of this indebtedness may be charged for the period of such default. Upon any default under this obligation, or the instrument securing it, at the option of the holder of this note, the unpaid balance of this note, and any advances made under it, or the instrument securing it, together with interest, shall become due and payable, time being the essence of this contract. * * *'" *Baker*, 61 Ill. 2d 119, 121, 333 N.E.2d 1, 2.

Thereafter, plaintiffs breached a condition set forth in section A(8)(d) by entering into an agreement to convey the property covered by the mortgage to a third party. Upon learning of the transaction, defendant notified plaintiffs that it would not recognize the sale and would thereafter charge the additional 1 percent interest provided in the note. Plaintiffs then brought an action seeking to declare section A(8)(d) of the mortgage and corresponding provision of the note unlawful and unenforceable. On cross-motions for summary judgment, the trial court granted plaintiff's motion and found that section A(8)(d) constituted an unlawful restraint on alienation. The appellate court reversed and remanded the cause to the trial court with directions to determine whether the restraint on alienation was reasonable under the circumstances. The supreme court affirmed the judgment of the appellate court and found that the covenant was not unreasonable.

While *Baker* and the present case may be similar in some respects, the salient difference between the two cases lies in the fact that in *Baker* the note contained a provision which corresponded to the covenant set forth in the mortgage, whereas in this case there exists no such parallel. Consequently, plaintiffs' reliance upon Baker is misplaced.

Having determined that the trust deed and the note are separate instruments and that the provisions in the trust deed have no effect on the material terms of the note, we need not address the remaining arguments advanced by the parties.

Accordingly, we affirm the judgment of the trial court.

Judgment affirmed.

LORENZ and MEJDA, JJ., concur.