CATHERINE M. MERCADO *et al.*, Plaintiffs-Appellants, v. CALUMET FEDERAL SAVINGS AND LOAN ASSOCIATION, Defendant-Appellee.

First District (1st Division)   No. 1—88—0906

Opinion filed March 26, 1990.

Law Offices of Darryl R. Lem, of Calumet City (Michael M. Resney, of counsel), for appellants.

J. Stirling Mortimer, of Dolton, for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:
The plaintiffs, Catherine Mercado and her son, Michael Kuknyo, brought an action in the circuit court of Cook County against the defendant, Calumet Federal Savings and Loan Association. Plaintiffs sought a release of their mortgage, held by the defendant, and also

sought a determination that the defendant's assessment of $7,500 in attorney fees was improper. The circuit court denied the plaintiffs' request for a release of their mortgage and also held that the attorney fees assessed by the defendant were reasonable. The plaintiffs then appealed the circuit court's order to this court.

On July 30, 1976, Mercado established a land trust, known as Trust 1137, with the River Oaks Bank & Trust Company (River Oaks). River Oaks, as trustee, was named grantee of a single family dwelling located at 521 Ingram Avenue in Calumet City, Illinois. The trust agreement stated that the entire beneficial interest in the trust was to be vested in Mercado. According to the plaintiffs, both Mercado and Kuknyo resided in the home.

Subsequently, on April 29, 1979, Mercado made an application to refinance an existing mortgage with a new loan of $20,500 at 10% interest. It is not clear from the record when the original mortgage was executed or what the amount of that mortgage was. Mercado stated that the purpose of the refinancing was to help her son. The new mortgage was executed on May 29, 1979, with River Oaks as mortgagor and defendant as mortgagee. The mortgage provided, in the provision at issue here:

"That in the event the ownership of said property or any part thereof becomes vested in a person other than the Mortgagor *** the undersigned further agrees that in the event of the sale, assignment or pledge by the mortgagor of the property (or any interest therein) which is the subject of this mortgage, the mortgagee or its assigns may at its option, declare the entire balance of principle and interest remaining due hereunder at that time, immediately due and payable."

Thereafter, the defendant sent plaintiffs a notice of default on May 20, 1983, stating that Mercado had breached her mortgage agreement. Defendant claimed that Mercado had sold her home to Kuknyo without first obtaining its written consent. According to the defendant, it was put on notice of the sale when it received a copy of a homeowner's insurance policy on the trust property for 1983-84 which showed Kuknyo as the contract purchaser and beneficiary, and showed that Mercado no longer had the same mailing address as Kuknyo. The defendant notified plaintiffs that it intended to use its option to accelerate the mortgage and warned that foreclosure proceedings would be instituted if plaintiffs failed to tender the entire unpaid principle balance within 30 days.

Plaintiffs then filed suit on November 18, 1983, in the United States District Court for the Northern District of Illinois, in order to

stop the acceleration. In their complaint, the plaintiffs alleged the following: (1) in May 1979, Mercado financed a loan through the defendant and as security for the loan, she mortgaged her home; (2) Mercado told the defendant that the loan was for the benefit of her son, Kuknyo, and that Kuknyo would make all payments on the loan; (3) defendant accepted Kuknyo's payments on the loan for several years; (4) defendant then noticed that the home was insured in Kuknyo's name and asked Mercado to transfer ownership to him; (5) pursuant to defendant's request, plaintiffs prepared a sale contract between Mercado and Kuknyo and delivered it to defendant; (6) upon receiving the sale contract, the defendant sent plaintiffs a letter notifying them that it had decided to accelerate payments on the note; (7) defendant also said that in lieu of foreclosure on the note, plaintiffs could execute a new note and mortgage at a higher interest rate. Plaintiffs claimed that the defendant's acceleration of the mortgage violated the Real Estate Settlement Procedures Act of 1974 (12 U.S.C. §2607(b) (1982)).

On April 27, 1984, the district court entered an order granting the defendant's motion to dismiss, holding that the plaintiffs had failed to state a cause of action. The plaintiffs then appealed to the United States Court of Appeals for the Seventh Circuit. The Seventh Circuit affirmed the district court's order without holding oral argument on the issues. *Mercado v. Calumet Federal Savings & Loan Association* (7th Cir. 1985), 763 F.2d 269.

Following the Federal lawsuits, the defendant sent plaintiffs a letter stating that $7,500 had been added to their mortgage. The defendant explained that the additional $7,500 was for attorney fees it had incurred defending the Federal lawsuits. Defense counsel had billed the defendant for 100 hours of work at $75 an hour. The defendant noted that plaintiffs' mortgage document contained a provision which allowed it to assess a reasonable amount of attorney fees for litigation concerning the mortgage document. Specifically, that provision provided:

> "That the Mortgagee may employ counsel for advice or other legal service at the Mortgagee's discretion in connection with any dispute as to the debt hereby secured or the lien of this Instrument, or any litigation to which the Mortgagee may be made a party on account of this lien or which may affect the title to the property securing the indebtedness hereby secured or which may affect said debt or lien and any reasonable attorney's fees so incurred shall be added to and be a part of the debt hereby secured."

Thereafter, on December 17, 1986, plaintiffs tendered the balance owed on their mortgage, except for the amount assessed in attorney fees, and demanded a release of their mortgage.

When the defendant did not release the mortgage, plaintiffs filed suit in the circuit court of Cook County. Plaintiffs asked the court to order the defendant to tender the release and to deny the defendant's request for attorney fees. The defendant claimed that it was entitled to accelerate the plaintiffs' mortgage because Mercado had misrepresented on her mortgage application that the premises were to be owner-occupied, and also because Mercado had sold her home to Kuknyo without first consulting it. In addition, the defendant alleged that plaintiffs had failed to respond to defendant's repeated inquiries concerning the sale between Mercado and Kuknyo. Finally, because the Federal litigation related to the mortgage, defendant argued that it was entitled to attorney fees.

The plaintiffs filed a motion for summary judgment on May 13, 1987, asking the court to remove the assessment of $7,500 against them and to order the release of their mortgage. Defendant then filed its own motion for summary judgment on June 23, 1987. Along with its motion, the defendant filed the affidavit of Lorraine Straka, vice-president of defendant's loan department. In her affidavit, Straka said that on April 29, 1979, Mercado applied for a mortgage loan from the defendant, stating that she wanted to refinance her property in order to obtain $10,000 for her son. Mercado also told the loan officer that title to her property was held in trust and that she currently resided on the property. Finally, Straka claimed that the defendant learned of the sale between Mercado and Kuknyo in March 1983, when a request for an insurance change revealed the sale contract.

The trial court entered an order on July 21, 1987, denying plaintiffs' motion for summary judgment. The court also stated that it had made no finding as to the rightfulness or wrongfulness of the acceleration but, regardless of the correctness of the defendant's action, found that the defendant might be entitled to attorney fees. The court then set the case for bench trial on September 17, 1987, to determine whether the defendant's assessment of attorney fees was reasonable.[1] At the trial, defense counsel explained that although the defendant had threatened to accelerate the plaintiffs' mortgage, it had never actually done so. Kuknyo then testified and said that the sale contract

---

[1]The record does not show what ruling, if any, the trial court made concerning the defendant's motion for summary judgment. This omission, however, does not affect our disposition of the case.

between his mother and himself had been drawn up at the defendant's request. Following submission of the sale contract to the defendant, however, the defendant sent Kuknyo notice of default. Kuknyo claimed that the defendant indicated that it would recognize him as the owner of the property if he agreed to pay a higher interest rate on the mortgage. Kuknyo also said that in reality, ownership of the building had not changed since 1976. On cross-examination, Kuknyo testified that the defendant's request for a sale contract was made in 1983, but that the parties decided to backdate the contract to 1980. Finally, Kuknyo testified that the defendant had at all times been aware that he had a "private agreement" with his mother concerning the house.

On October 6, 1987, the circuit court entered its order, holding that the defendant's acceleration of plaintiffs' mortgage was done with good cause and that defendant's claim for attorney fees was reasonable. The court did not explain its basis for finding that the defendant's threatened acceleration was proper. The court then denied plaintiffs' motion to reconsider or clarify, and this appeal followed.

Plaintiffs' first contention on appeal is that the defendant wrongfully accelerated their note and mortgage. In support of this argument, plaintiffs claim that the defendant was permitted to accelerate their mortgage only if there was an affirmative act by the mortgagor, such as a sale of the mortgaged property. According to plaintiffs, however, there was no sale here because River Oaks at all times remained the owner of the property as trustee. Further, plaintiffs argue that even if the sale from Mercado to Kuknyo was sufficient to trigger the acceleration clause, the defendant had waived its right to accelerate the mortgage. Plaintiffs contend that both Mercado and Kuknyo had been listed on the home insurance policy since 1976; therefore, the defendant was on notice of their arrangement from the beginning. Finally, plaintiffs contend that the defendant, by accelerating their mortgage, breached its duty of good faith and fair dealing and, therefore, the defendant owes plaintiffs their attorney fees.

In response, defendant argues that under the circumstances, its acceleration of the mortgage was not done in bad faith. Defendant alleges that Mercado was uncooperative and never responded to defendant's repeated attempts to clarify her ownership and insurance records. In addition, defendant claims that Mercado made a misrepresentation in her loan application when she indicated that the premises were to be owner-occupied. Defendant concludes, then, that it properly accelerated the mortgage.

Plaintiffs rely on a number of cases in support of their argument that the defendant wrongfully accelerated their mortgage. In *Wachta v. First Federal Savings & Loan Association* (1981), 103 Ill. App. 3d 174, 430 N.E.2d 708, the plaintiffs, land trust beneficiaries, wanted to assign their beneficial interest in a land trust to a third party. The defendant bank informed the plaintiffs that it would accelerate their mortgage if they did so. (*Wachta*, 103 Ill. App. 3d at 175, 430 N.E.2d at 710.) The trial court entered judgment in favor of the land trust beneficiaries, holding that the proposed assignment was not within the scope of the due-on-conveyance clause in the mortgage for the property held in trust. (*Wachta*, 103 Ill. App. 3d at 176, 430 N.E.2d at 711.) On appeal, the second district affirmed. The disputed clause provided that "all unpaid indebtedness secured by [the] mortgage shall *** become due and payable immediately upon conveyance by the Mortgagor of title, or execution by the Mortgagor of agreement to convey title, to all or any portion of the premises." (*Wachta*, 103 Ill. App. 3d at 175, 430 N.E.2d at 710.) The court held that the beneficiaries' proposed assignment did not trigger the due-on-conveyance clause because the title to the property would remain with the land trustee even after the beneficial interest had been transferred. *Wachta*, 103 Ill. App. 3d at 178, 430 N.E.2d at 712-13.

In *Fairbury Federal Savings & Loan Association v. Bank of Illinois* (1984), 122 Ill. App. 3d 808, 462 N.E.2d 6, a mortgagee brought a foreclosure action alleging that the beneficial owner of a land trust had violated a due-on-sale clause in her mortgage. The trust beneficiary had entered into a contract for deed, which was secured by an agreement exchanging warranty deed for deed in escrow. (*Fairbury*, 122 Ill. App. 3d at 809, 462 N.E.2d at 7.) The beneficiary then directed her bank, as trustee of the land trust, to draw and sign a trust deed and to hold it in escrow. (*Fairbury*, 122 Ill. App. 3d at 809-10, 462 N.E.2d at 7.) The fourth district held that the due-on-sale clause in the mortgage was not triggered by this arrangement because the deed was not executed by the bank, but was merely held in escrow. *Fairbury*, 122 Ill. App. 3d at 811, 462 N.E.2d at 8.

Finally, plaintiffs rely on the second district's decision in *Damen Savings & Loan Association v. Heritage Standard Bank & Trust Co.* (1982), 103 Ill. App. 3d 301, 431 N.E.2d 34. The court in *Damen* concluded that a due-on-transfer clause in a mortgage was triggered when the mortgagors created a land trust and transferred record title to a trustee. (*Damen*, 103 Ill. App. 3d at 304, 431 N.E.2d at 36.) The mortgagors had argued that the clause was not triggered because they remained in possession of the property and merely changed their

interest in the property into a personal property interest. While holding that transfer of record title *violated the due-on-transfer provision*, however, the court also noted that "[a] transfer of the beneficial interest in a land trust is not a conveyance of an interest in real property, and thus would not violate the 'due-on-transfer clause.' " *Damen*, 103 Ill. App. 3d at 304, 431 N.E.2d at 36.

In response, the defendant contends that it had the authority to accelerate plaintiffs' mortgage based on *Oak Trust & Savings Bank v. Chicago Title & Trust Co.* (1984), 129 Ill. App. 3d 250, 472 N.E.2d 497. In *Oak Trust*, the third district concluded that the transfer of all the beneficial interests in a land trust violated the terms of a due-on-sale clause in an installment note and trust deed. (*Oak Trust*, 129 Ill. App. 3d at 252, 472 N.E.2d at 498.) The court distinguished the *Wachta* case on the ground that the acceleration clause in *Wachta* specifically referred to transfers of title, while the acceleration clause in *Oak Trust* merely provided for acceleration "immediately upon any sale, assignment, transfer or conveyance of the premises." (*Oak Trust*, 129 Ill. App. 3d at 251-52, 472 N.E.2d at 498.) The court concluded that a "complete assignment of all the beneficial interests in the land trusts certainly constitutes a transfer of the premises." *Oak Trust*, 129 Ill. App. 3d at 252, 472 N.E.2d at 498.

Here, the trial court concluded that based on the mortgage documents, the plaintiffs had a duty to notify the defendant of any change in ownership of the real estate. The court also held that the defendant had good cause for its threatened acceleration because the plaintiffs had failed to respond to defendant's inquiries concerning the sale of the real estate.

■■ Upon reviewing the record, this court finds that there was insufficient evidence in the record presented for the trial court to conclude that the defendant had good cause for its threatened acceleration. A reviewing court cannot substitute its judgment for that of the trial court unless the trial court's judgment is against the manifest weight of the evidence. (*Central Production Credit Association v. Kruse* (1987), 156 Ill. App. 3d 526, 532, 509 N.E.2d 136, 139; *Williams v. Estate of Cross* (1980), 85 Ill. App. 3d 923, 925, 407 N.E.2d 704, 706.) A trial court's judgment is against the manifest weight of the evidence when a conclusion opposite that reached by the trial court is clearly evident. (*Central Production*, 156 Ill. App. 3d at 532, 509 N.E.2d at 140.) Where a trial record is devoid of any evidence supporting the trial court's decision, the trial court's judgment cannot stand. *Central Production*, 156 Ill. App. 3d at 532, 509 N.E.2d at 140; see also *Williams*, 85 Ill. App. 3d at 925, 407 N.E.2d at 706.

Here, in the trial court's July 21, 1987, order, the court stated, "The court makes no finding as to the acceleration being rightful or wrongful." Further, during trial, the court stated:

"I don't want to go into the issue of the reasonableness of the acceleration or that because I think that under the terms of the note that the bank literally had a right to protect its interest, and having done that, they had a right to collect attorney's fees. The only way in which this question of acceleration is in anyway at issue here is that it might affect the reasonableness of the fees. And that's the only part I want to address in that I don't want to go into a trial here on this [the acceleration issue] because you have already done that somewhere else."

When the attorneys pointed out to the court that the acceleration issue had not been heard before, the court responded, "I don't want to hear it because I don't think it's an issue here."

Although the court stated that it did not believe that acceleration was an issue in this case, in the court's findings following trial, the court held:

"[U]nder the mortgage documents with Defendant, Plaintiff[s] had a duty to notify Defendant of a change in occupancy or ownership which might affect Defendant's security, the subject real estate. *** Mercado, did not reside in the premises, but instead, without adequate notice to the Defendant, permitted her son, Michael B. Kuknyo, to reside thereat [sic]. She was selling that property to her son.

Defendant's threatened acceleration of the mortgage was with good cause after numerous inquiries as to why another person's name appeared as insured on Liability Insurance Notices for the property, went unanswered."

■ There is an insufficient basis in the record to support the trial court's conclusion. For example, although the trial court concluded that Mercado did not reside at the subject premises, it is not at all clear from the record whether or not Mercado resided on the premises at the time of the sale. The only evidence supporting the defendant's claim that Mercado moved was the 1983-84 homeowner's insurance policy which, defendant claimed, showed a different address for Mercado. However, Mercado herself never testified and neither Kuknyo's testimony nor Straka's affidavit clarifies whether Mercado moved out of the home that she shared with Kuknyo. In addition, the evidence suggested that the defendant itself requested the sale of the premises to Kuknyo. Nonetheless, the trial court concluded that the sale took place without the defendant's knowledge. Even if the

defendant was unaware of the sale, however, there is some support in case law indicating that the sale of a beneficial interest in a land trust may not trigger a due-on-sale clause. (See *Wachta*, 103 Ill. App. 3d 174, 430 N.E.2d 703; *Fairbury*, 122 Ill. App. 3d 808, 462 N.E.2d 6.) Here, Mercado sold only her beneficial interest; title to the property at all times remained with River Oaks. We also find significant the fact that the defendant never actually foreclosed on the plaintiffs' property. Defendant's only explanation for its failure to foreclose was that "the idea of foreclosure was abandoned by the defendant for the reason of impracticality of doing so."

Finally, the court held that the defendant's threatened acceleration was with good cause because plaintiffs did not respond to the defendant's inquiries concerning the ownership of the home. The due-on-sale clause in the mortgage, however, provided for acceleration only "in the event of the sale, assignment or pledge by the mortgagor of the property." Failure to cooperate with the defendant was not listed as a ground for acceleration. Accordingly, we remand for a sufficient determination as to whether there was sufficient cause to trigger the due-on-sale clause.

The plaintiffs also raise five issues on appeal related to the assessment of attorney fees. The plaintiffs claim that: (1) the trial court improperly awarded attorney fees to the defendant because the defendant was entitled to attorney fees only when the litigation related to the mortgage, and the litigation here did not relate to the mortgage, but instead related only to acceleration; (2) the trial court erred in failing to impose on the defendant the burden of proving that the attorney fees it had assessed were reasonable; (3) since the defendant wrongfully accelerated their mortgage and was not entitled to attorney fees, the trial court erred in denying the plaintiffs' motion for summary judgment; (4) the trial court improperly admitted into evidence an itemized bill for defense counsel's services because there was no foundation for the bill and the bill was inaccurate; and (5) the $7,500 assessed against the plaintiffs in attorney fees was unreasonable.

The defendant responds that it was entitled to recover attorney fees for the litigation here because the Federal lawsuits related to the plaintiffs' mortgage. The defendant also claims that it sustained its burden of showing that the fees it charged were reasonable. Finally, the defendant contends that the trial court properly admitted into evidence the itemized bill for defense counsel's services and that the trial court properly denied plaintiffs' motion for summary judgment.

■ Provisions in contracts for awards of attorney fees are per-

missible; however, only those fees which are reasonable are allowed, and the determination of reasonableness is left to the trial court's discretion. (*Kaiser v. MEPC American Properties, Inc.* (1987), 164 Ill. App. 3d 978, 983, 518 N.E.2d 424, 427.) The burden is on the part of the party seeking the fees to present the court with sufficient evidence from which it can determine the reasonableness of the fees. (*Kaiser*, 164 Ill. App. 3d at 983, 518 N.E.2d at 427.) A party attempting to justify a fee must show more than a compilation of hours multiplied by a fixed hourly rate, or copies of the bills issued to the client, because this data, alone, does not provide sufficient information as to reasonableness. (*Kaiser*, 164 Ill. App. 3d at 984, 518 N.E.2d at 427.) A determination of reasonableness cannot be made on the basis of conjecture or on the opinion or conclusions of the attorney seeking the fees. (*Kaiser*, 164 Ill. App. 3d at 984, 518 N.E.2d at 427.) A fee petition must specify "the services performed, by whom they were performed, the time expended thereon and the hourly rate charged therefor." (*Kaiser*, 164 Ill. App. 3d at 984, 518 N.E.2d at 427.) The party seeking fees, then, must present the court with "detailed records maintained during the course of the litigation containing facts and computations upon which the charges are predicated." *Kaiser*, 164 Ill. App. 3d at 984, 518 N.E.2d at 427-28.

In addition to a party's detailed records, in determining an award of attorney fees, the trial court should consider additional factors,

"such as the skill and standing of the attorneys, the nature of the case, the novelty and/or difficulty of the issues and work involved, the importance of the matter, the degree of responsibility required, the unusual and customary charges for comparable services, the benefit to the client [citation], and whether there is a reasonable connection between the fees and the amount involved in the litigation." (*Kaiser*, 164 Ill. App. 3d at 984, 518 N.E.2d at 428.)

Finally, a trial court's determination concerning attorney fees should not be reversed absent an abuse of discretion. *Kaiser*, 164 Ill. App. 3d at 984, 518 N.E.2d at 428.

In the case at hand, the bill submitted to defendant by defense counsel listed 60 hours of work in the Federal district court "to include pleadings, motions, research and briefs," and 40 hours of work on the Seventh Circuit appeal "to include research and briefs." The bill then listed "Attorney's Fees....$7,500." At trial, when the court asked defense counsel if he had his original time records, defense counsel said that he no longer had the actual time records, and had

not had those records for the last three years. Defense counsel did submit, however, an itemized bill purporting to reflect the work done on the Federal cases. The plaintiffs objected to this bill, arguing that it was not prepared until April 1987, and that certain entries on the bill were either undated or contained clearly erroneous dates. For example, the bill lists 1½ hours of work on December 24, 1983, even though defense counsel admitted that his office was closed on that date. Defendant admits that this date was erroneous, but claims that the December 24 date related to the date the pleading was received by his office.

The trial court allowed the itemized bill into evidence and found that $7,500 was a reasonable fee. The record does not contain an adequate basis to support the trial court's conclusion that the fees were reasonable. The itemized bill submitted by defense counsel did not contain "detailed records maintained during the course of the litigation." (See *Kaiser*, 164 Ill. App. 3d at 984, 518 N.E.2d at 427-28.) Further, among the undated items listed on defense counsel's bill were 10 hours for "research in connection with the brief in support of defendant's motion to dismiss," 11 hours for "research for the balance of the case in connection with the trial court," and 20 hours for "research in connection with the appeal and brief." These entries are too vague and lacking in sufficient details concerning the nature of the legal tasks performed, the actual time spent on each task, the identity of the person who performed the tasks, the relationship of the legal tasks to the litigation, the necessity of the legal tasks, and the complexity of the Federal matters to sustain the burden of showing the reasonableness of the fees. In addition, since the plaintiffs questioned the accuracy of the itemized bill prepared by defense counsel and defense counsel admitted that he no longer had the original time records for the Federal suits, it appears to this court that the burden of proving the reasonableness of said fees was not established by the evidence presented.

We further note that the record failed to address the problem that the mortgagors in this case had no means to contest the reasonableness of the fees assessed against them. During oral argument on this issue, defendant admitted that the mortgage document did not prove a mortgagor with an opportunity to contest or dispute the amount of attorney fees charged to the defendant and later assessed against them. A trial court must exhibit the utmost concern in a situation where, as here, one party to an agreement has the unrestricted right to claim that a breach of the agreement has occurred, and then adds on an assessment of attorney fees as a result of such breach, without

affording the other party an opportunity to contest or dispute the reasonableness of such fees. Here, the only procedure provided to contest the reasonableness of such fees was by way of litigation, which then serves to tack on even more attorney fees and further litigation, resulting in a multiplicity of lawsuits.[2]

Accordingly, for all of the foregoing reasons, we reverse the judgment of the circuit court of Cook County and remand for further proceedings consistent with this opinion.

Judgment reversed and remanded.

BUCKLEY, P.J., and MANNING, J., concur.

---

[2]For example, in this case, the plaintiffs claimed during oral argument that they had to pay the contested $7,500 in attorney fees, *plus* an additional $9,000, in order to sell their home. The additional $9,000 fee is currently being contested in another lawsuit which, along with the fees generated in the present case, could serve to tack on fees which may exceed the plaintiffs' $20,500 mortgage.